**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THOMAS ORZOLEK,** *on behalf of himself and all others similarly situated*, | **:** | |
| **Plaintiffs,** | | **Case No. 2:25-cv-78** |
| | | **Chief Judge Sarah D. Morrison** |
| **v.** | | **Magistrate Judge S. Courter M. Shimeall** |
| **ELIGO ENERGY, LLC,** *et al.*, | **:** | |
| **Defendants.** | | |

**OPINION AND ORDER**

This case is one of several putative class actions filed in federal courts against Eligo Energy, LLC and Eligo Energy OH, LLC (collectively "Eligo") alleging breach of contract.

This matter is now before the Court on Eligo's Motion to Dismiss or, in the Alternative, to Stay the Case (ECF No. 11) and that Motion is fully briefed. For the reasons below, the Motion is **DENIED**.[1]

## I. ALLEGATIONS IN THE COMPLAINT

The factual allegations, but not legal conclusions, in the Complaint are considered as true for purposes of the pending motion. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

---

[1] On September 16, 2025, the Court granted Defendants' request for a stay and that stay was lifted on February 4, 2026. (ECF Nos. 28, 36.) Defendants' alternative request in their Motion is **DENIED as moot**.

Eligo is a certified retail energy supplier ("CRES") that competes with local utilities to sell electricity and natural gas in deregulated energy markets such as Ohio. (Compl., ECF No. 1, ¶ 2.) It is a middleman, buying energy on the wholesale market and reselling the energy to its customers with a markup. (*Id.*)

Thomas Orzolek, an Ohio resident, entered a 36-month fixed-rate contract for electricity with Eligo in August 2018, using Eligo's standard customer contract. (*Id.*, ¶¶ 9, 39.) The contract allowed Mr. Orzolek to cancel for any reason, at any time, and at no cost after the fixed rate term expired. (*See id.*, ¶¶ 9, 40.) The contract further provided that Eligo would charge him variable rates after expiration of the fixed rate term and that those variable rates would "be based on 100% renewable energy (through use of Renewable Energy Certificates[2]) and . . . may be periodically adjusted to market conditions." (*Id.*, ¶ 3.)

Eligo charged Mr. Orzolek a fixed rate until June 2022 and then switched him to a variable rate. (*Id.*, ¶ 41.) After approximately seven months on the variable rate plan, he cancelled his Eligo account. (*Id.*, ¶¶ 9, 40.)

According to Mr. Orzolek, Eligo's variable rate pricing structure in its standard customer contracts has two verifiable and documented components: (1) Eligo's cost to procure energy supply at wholesale, and (2) the cost of RECs to offset 100% of the customers' energy usage, which Eligo buys so it can claim to be

---

[2] Renewable Energy Certificates or "RECs" are tradable certificates that represent the environmental benefits of electricity generated from renewable sources by a different party. RECs are tradable commodities that can be bought and sold in the market. CRESs like Eligo buy RECs and pair them with the "brown" energy they purchase at wholesale and then market their energy supply as "100% renewable energy." (Compl., ¶ 3.)

2

providing "100% renewable energy." (*Id.*, ¶ 43.) Mr. Orzolek goes on to claim that neither of these two cost factors explain Eligo's charges, but that Eligo set its rates at the highest feasible price before its customers left. (*Id.*, ¶¶ 46, 47, 52.) He thus alleges that Eligo breached its contract with him and others by not setting variable rates in accordance with the terms of its contract, instead charging excessive rates to reach varying profit margins. (*Id.*, ¶ 4.)

Mr. Orzolek seeks to represent a class of all residential and commercial customers in the United States whose contract had the same or equivalent pricing terms as his contract, and who were charged a variable rate for electricity or natural gas services by Eligo. (*Id.*, ¶ 76.)

## II.    ANALYSIS

Eligo seeks dismissal of the Complaint on two grounds. First, it argues that Mr. Orzolek's claim falls within the exclusive jurisdiction of the Public Utilities Commission of Ohio ("PUCO"). In the alternative, Eligo argues that Mr. Orzolek has failed to state a claim for breach of contract.

### A.    Subject Matter Jurisdiction

Generally, threshold challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) should be decided first. *See Bell v. Hood*, 327 U.S. 678, 682 (1946). In most circumstances, the plaintiff has the burden of proving jurisdiction to survive a motion to dismiss. *Hickey v. Chadick*, 649 F. Supp. 2d 770, 773 (S.D. Ohio 2009) (Graham, J.).

Challenges to subject matter jurisdiction can be facial or factual. Facial attacks "challenge the sufficiency of the pleading itself," and require the Court to examine the jurisdictional basis. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citation omitted). Whereas factual attacks contest "the factual existence of subject matter jurisdiction." *Id.* Eligo makes a facial attack here, arguing that PUCO has exclusive jurisdiction over pricing disputes between customers and CRESs.

The Court starts its analysis by reviewing a 2020 decision from the Northern District of Ohio in another case alleging a breach of contract claim against a CRES: *Weaver v. North Am. Power & Gas LLC*, No. 1:19-cv-1339, 2020 WL 109163 (N.D. Ohio Jan. 9, 2020). Recognizing that the question of PUCO's exclusive jurisdiction over a CRES is "a very close case," the Northern District of Ohio analyzed PUCO's regulatory scheme and existing precedent and concluded that PUCO had exclusive jurisdiction over a breach of contract claim against a CRES. *Id.* at *1. But this Court disagrees. As detailed below, a careful analysis of PUCO's regulatory scheme and existing precedent reveals that PUCO does not have exclusive jurisdiction over Mr. Orzolek's claim.

PUCO certifies and supervises both public utilities and CRESs. *See* Ohio Rev. Code §§ 4928.01, 4901.01, 4928.08. But the statutory schemes governing PUCO's regulatory authority over the two types of entities are very different, and those differences reveal why PUCO does not have exclusive jurisdiction over this case.

### 1. PUCO's Regulatory Authority over Utilities

Starting with public utilities, PUCO has robust and thorough regulatory oversight over public utilities. Title 49 of the Ohio Revised Code "reflects a comprehensive statutory regime that governs the business activities of public utilities." *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 865 N.E.2d 1275, 1279 (Ohio 2007). That statutory regime provides in relevant part:

> Upon complaint in writing against any public utility by any person . . . that any rate, fare, charge, toll, rental, schedule, classification, or service, . . . or service rendered . . . is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by the public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, . . . if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof. The notice shall be served not less than fifteen days before hearing and shall state the matters complained of. The commission may adjourn such hearing from time to time.

Ohio Rev. Code § 4905.26.

Where "the General Assembly has enacted a complete and comprehensive statutory scheme governing review by an administrative agency, exclusive jurisdiction is vested within such agency." *Kazmaier Supermarket, Inc. v. Toledo Edison Co.*, 573 N.E.2d 655, 659 (Ohio 1991). The Ohio Legislature has established the public policy in Ohio "that the broad and complete control of public utilities shall be within [PUCO]." *Id.* at 658. To that end, Ohio courts have recognized that PUCO has "exclusive jurisdiction over various matters involving public utilities,

such as rates and charges, classifications, and service, effectively denying to all Ohio courts (except [the Ohio Supreme Court]) any jurisdiction over such matters." *State ex rel. Cleveland Elec. Illum. Co. v. Cuyahoga Cnty. Ct. of Common Pleas*, 727 N.E.2d 900, 903 (Ohio 2000). PUCO's exclusive jurisdiction over utilities extends to: (1) overseeing filed tariffs; (2) adjudicating complaints about rates charged to customers; (3) handling disputes regarding service quality, billing practices, and termination of service; and (4) other matters requiring PUCO's regulatory expertise. *Hull v. Columbia Gas of Ohio*, 850 N.E.2d 1190, 1194 (Ohio 2006) (citing *State ex rel. Ohio Bell Tel. Co. v. Common Pleas Ct. of Cuyahoga Cnty.*, 192 N.E. 787, 788–89 (Ohio 1934)); *see also Duke Energy Ohio, Inc. v. City of Hamilton*, 117 N.E.3d 1, 9 (Ohio Ct. App. 2018) (PUCO has the exclusive jurisdiction to administer the Ohio Certified Territories Act and tariffs filed with PUCO); Ohio Rev. Code §§ 4903.12, 4933.90.

But PUCO's exclusive jurisdiction over utilities is not limitless. Courts retain jurisdiction over contract and tort claims against utilities when the claims do not implicate PUCO's specialized regulatory authority. *Corrigan v. Illum. Co.*, 910 N.E.2d 1009, 1011 (Ohio 2009) ("The broad jurisdiction of PUCO over service-related matters does not affect the basic jurisdiction of the court of common pleas . . . in other areas of possible claims against utilities, including pure tort and contract claims." (citation modified)); *see also Allstate Ins. Co. v. Cleveland Elec. Illum. Co.*, 893 N.E.2d 824, 827–28 (Ohio 2008) (adopting a test to determine whether PUCO has exclusive jurisdiction over a claim against a utility).

6

### 2. PUCO's Regulatory Authority over CRESs

Turning to CRESs, PUCO's regulatory oversight is much more limited. A CRES must obtain certification by PUCO regarding its "managerial, technical, and financial capability to provide that service and provide[] a financial guarantee sufficient to protect customers and electric distribution utilities from default." Ohio Rev. Code § 4928.08(B). But once certified, CRESs are exempt from the vast majority of PUCO's regulations, including oversight of the electricity rates they charge and the methods by which those rates are set:

> A competitive retail electric service supplied by an electric services company, or by an electric utility . . . shall not be subject to supervision and regulation . . . by the public utilities commission under Chapters 4901. to 4909., 4933., 4935., and 4963. of the Revised Code, except sections 4905.10 and 4905.31, division (B) of section 4905.33, and sections 4905.35 and 4933.81 to 4933.90; except sections 4905.06, 4935.03, 4963.40, and 4963.41 of the Revised Code only to the extent related to service reliability and public safety; and except as otherwise provided in this chapter.

Ohio Rev. Code § 4928.05(A)(1). The designated areas where PUCO retains "supervision and regulation" address the relationship between CRESs and the public utilities that provide and deliver the electricity. *Weaver v. North Am. Power & Gas LLC*, No. 1:19-cv-1339, 2019 WL 8688657, at *4 n.2 (N.D. Ohio Dec. 16, 2019), *report and recommendation rejected*, 2020 WL 109163 (N.D. Ohio Jan. 9, 2020).

PUCO does have some level of authority to resolve complaints regarding services provided by CRESs:

> The public utilities commission has jurisdiction under section 4905.26 of the Revised Code, upon complaint of any person or upon complaint or initiative of the commission on or after the starting date of competitive retail electric service, regarding the provision by an electric utility, electric services company, electric cooperative, or governmental aggregator subject to certification under section 4928.08 of the Revised Code of any service for which it is subject to certification.

Ohio Rev. Code § 4928.16(A)(1). But this statutory language expressly limits PUCO's jurisdiction over CRESs to complaints about "any service for which it is subject to certification." *Id.* And while this jurisdiction could arguably extend to pricing disputes resulting from a CRES supplying electricity, *see id.* § 4928.08(B), nothing in the statutes suggest that such jurisdiction is *exclusive*.

The Ohio Supreme Court has not had occasion to address the circumstances, if any, in which PUCO's jurisdiction is exclusive in cases involving CRESs. That said, the governing statutes are telling. If the Ohio legislature intended for PUCO to have exclusive jurisdiction over a CRES's rates, contracts, and business practices, it would have said so just like it did for the sale of electricity by public utilities. Instead, the statutes establishing the regulatory system for utilities specifically exempt CRESs from the vast majority of its regulations, including the provisions addressing the setting of rates for consumers. Areas not regulated by PUCO cannot be subject to its exclusive jurisdiction. Thus, Mr. Orzolek's claim—asserting that Eligo breached its contract with him and others by not setting variable rates in accordance with terms of its contract—does not fall within PUCO's exclusive jurisdiction.

### 3.    *Allstate* Analysis

Even if this Court were to conclude that PUCO's exclusive jurisdiction over CRESs is broader than it is, the Court still must consider the Ohio Supreme Court's decision in *Allstate Ins. Co. v. Cleveland Elec. Illum. Co.*, 893 N.E.2d 824 (Ohio 2008). This step is necessary because, as explained above, courts retain jurisdiction over tort and contract claims against entities generally subject to PUCO's exclusive jurisdiction when such claims do not implicate PUCO's specialized regulatory authority.[3]

In *Allstate*, the court adopted a test to help a trial court determine when it, not PUCO, has jurisdiction over claims involving a public utility. 893 N.E.2d at 827; *see also DiFranco v. FirstEnergy Corp.*, 980 N.E.2d 996, 1002 (Ohio 2012) (applying the *Allstate* test to a breach of contract claim). The *Allstate* test asks two questions: "First, is PUCO's administrative expertise required to resolve the issue in dispute? Second, does the act complained of constitute a practice normally authorized by the utility? If the answer to either question is in the negative, the claim is not within PUCO's exclusive jurisdiction." *Allstate*, 893 N.E.2d at 828 (citation modified). Courts must review the substance of claims to determine whether PUCO-related issues are involved, rather than being limited to the allegations in the complaint. *Nationwide Energy Partners, LLC v. Ohio Power Co.*, 201 N.E.3d 419, 424 (Ohio Ct. App. 2022).

---

[3] Although *Allstate* only applies to utilities, the same rationale would apply to CRESs if PUCO's exclusive jurisdiction over a CRES is the same as its exclusive jurisdiction over a utility.

Here, the answer to the first question is no—PUCO's administrative expertise is not required to resolve the issue in dispute. The claim brought is a classic breach of contract case: Mr. Orzolek alleges that Eligo contracted with him and others to calculate its variable rate in a particular way but charged them higher rates that were not determined in accordance with the contract's method. (Compl., ¶¶ 3, 4.) And because PUCO does not have regulatory authority over rates set by CRESs, *see* Ohio Rev. Code § 4928.05(A)(1), Mr. Orzolek's claim presents an issue of contract interpretation that does not call for PUCO's specialized expertise.

The answer to the second question is also no for a similar reason: PUCO neither "authorizes" nor regulates how CRESs calculate the variable rates they offer to consumers, which is the only "practice" at issue here.

Therefore, even if PUCO's broad exclusive jurisdiction over utilities extends to CRESs, the result of the *Allstate* test is that this Court has jurisdiction over Mr. Orzolek's contract claim. And federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989) (quoting *Cohens v. Virginia*, 19 U.S. 264, 404 (1821)).

For the above reasons, Eligo's Motion to Dismiss for lack of subject matter jurisdiction is **DENIED**.

### B. Failure to State a Claim

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Id.* (citing *Twombly,* 550 U.S. at 555.) "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In reviewing a motion to dismiss, the Court "construe[s] the complaint in the light most favorable to the plaintiff[.]" *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007).

Eligo argues that Mr. Orzolek has failed to state a breach of contract claim based on his allegation that Eligo's prices were higher than wholesale costs and utility prices in seven of the 52 months he was a customer. (ECF No. 11, PAGEID# 61.) But Eligo reads the Complaint too narrowly. Mr. Orzolek also alleges that Eligo's prices were at odds with the formula it agreed to abide by in the contract.

(*See, e.g.*, Compl., ¶ 96.) Accepting Mr. Orzolek's allegations as true, it cannot be said that he failed to state a claim.

Eligo's Motion to Dismiss for failure to state a claim is **DENIED**.

## III.   CONCLUSION

For the reasons above, Eligo's Motion to Dismiss or, in the Alternative, to Stay the Case (ECF No. 11) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

12